# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SHIRLEY WOODS, | ) |
| Plaintiff, | ) 09 CV 300 |
| v. | ) |
| | ) Magistrate Judge Young B. Kim |
| WICKES FURNITURE, INC., et al., | ) |
| | ) April 7, 2011 |
| Defendants. | ) |

## MEMORANDUM OPINION and ORDER

Throughout the summer of 2010, the parties to this employment discrimination lawsuit engaged in settlement negotiations which, according to Wickes Furniture Company, Inc. ("Wickes") and Suzanne Forsythe (together, "the defendants"), culminated in an enforceable settlement agreement. Woods takes the position that the settlement agreement was never finalized and argues that she is not bound by its terms. Currently before the court is the Defendants' Motion to Enforce Settlement Agreement. For the following reasons, the motion is denied.

## Background

The following facts are taken from the record and from Patrick Dolan's affidavit, which the defendants submitted along with the current motion. In her response, Woods contests neither the veracity of Dolan's averments related to the settlement negotiations, nor the authenticity of the exhibits attached to his affidavit. On January 16, 2009, Woods filed a pro se employment discrimination complaint against the defendants alleging race and sex discrimination, retaliation, and wrongful termination in violation of 42 U.S.C. §§ 1981-1983.

(R. 1 at 3.) The case was stayed from February through July 2009 while Wickes pursued Chapter 11 bankruptcy. (R. 8.) Three months after the stay was lifted, attorney Jamie Leigh Mickelson filed a limited appearance on Woods's behalf through this court's settlement assistance program, (R. 44, 48), and the parties began to discuss settlement.

On June 17, 2010, Mickelson sent the defendants' attorney, Patrick Dolan, a letter stating that "Ms. Woods accepts defendants' June 15, 2010 offer to settle the above-referenced matters in exchange for $6,250, subject to review of and mutual agreement to the settlement terms. It is my understanding that you will draft the settlement agreement and releases, at which point I will review those documents with Ms. Woods." (R. 94, Ex. A-2.) She requested that Dolan contact her "to discuss the exact terms of the settlement agreement." (Id.)

In July 2010 the parties consented to the jurisdiction of the undersigned magistrate judge for all further proceedings. (R. 69.) Throughout July and August of 2010 the attorneys for Woods and the defendants continued to trade emails reflecting ongoing revisions to the proposed written settlement agreement. (R. 94, Ex. A-1.) In an email dated July 26, 2010, Mickelson asked Dolan for his draft of the settlement documents so she could review them with Woods. (Id.) Mickelson expressed her hope that Woods would sign the agreement shortly after that review. (Id.) After receiving the draft, Mickelson sent Dolan back a redline copy of the document with proposed changes. (Id.) Dolan responded with another revision incorporating changes from Wickes's insurer. (Id.) On August 12, 2010, Lyndsay Speece

2

replaced Mickelson as Woods's attorney of record to complete the settlement process. (R. 74.) On August 19, 2010, Speece sent the defendants' attorney an email stating, "My client is ok with the settlement agreement in its final form and has agreed to sign it once signatures are obtained on your end." (R. 94, Ex. A-1.) Eight days later, on August 27, 2010, Dolan emailed Speece a copy of the settlement agreement which he characterized in the email as "the final, approved version." (Id.) The final version of the agreement includes a provision stating that the "effective date of this Agreement shall be seven days following its signature by Woods." (Id. Ex. A at 4.) That same day, Speece emailed the defendants' attorney, saying "The latest version of the settlement agreement is acceptable. Please circulate to your clients for signature. After speaking further with my client, she feels most comfortable signing after the signatures are obtained on your end." (Id.)

After the defendants' signatures were obtained, on October 14, 2010, Speece called counsel for the defendants and stated that Woods would not sign the agreement. (R. 94, Dolan Aff. ¶ 12.) At a status hearing held the next day, Speece informed the court that Woods had decided to litigate the matter. (R. 82.) A month later the defendants filed the current motion to enforce the settlement agreement. (R. 92.) This court allowed attorney Speece to withdraw her limited appearance, and accordingly, Woods filed a pro se response to the motion. (R. 100, 101.) The defendants did not file a reply.

3

**Analysis**

The defendants argue that Woods accepted all of the essential terms and conditions conveyed in the written settlement agreement, and that accordingly, they have a binding oral agreement despite Woods's refusal to sign the written version. In response Woods raises several arguments, which must be construed liberally given her pro se status. *See United States v. Chapman*, 954 F.2d 1352, 1358 n.8 (7th Cir. 1992). Among those arguments are her assertions that the agreement is unconstitutional and fatally unfair. But her central—and ultimately successful—contention is that throughout the parties' settlement negotiations she retained the right to review and reject the written settlement agreement. She asserts that the emailed negotiations demonstrate the parties' intent not to be bound by the agreement until she signed it. In other words, Woods argues that her signature is a condition precedent to the settlement agreement. *See Lambert Corp. v. Evans*, 575 F.2d 132, 135 (7th Cir. 1978).

The district court has the inherent discretion to summarily enforce a settlement agreement reached in a case pending before it. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). State contract law governs matters of the formation, construction, and enforcement of a settlement agreement. *Magallanes v. Illinois Bell Tel. Co.*, 535 F.3d 582, 584 (7th Cir. 2008). Under Illinois law, an oral settlement agreement is enforceable if "'there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement.'" *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007) (quoting *Wilson v. Wilson*, 46 F.3d 660, 666 (7th Cir. 1995)). If the oral agreement meets those

4

criteria, it is enforceable even if the parties intend to reduce the terms to writing at a later point. *Ceres Ill., Inc. v. Illinois Scrap Processing, Inc.*, 500 N.E.2d 1, 5 (Ill. 1986). In the federal employment discrimination context, the enforceability of a settlement agreement also turns on whether the settlement was entered into "knowingly and voluntarily." *Newkirk v. Village of Steger*, 536 F.3d 771, 774 (7th Cir. 2008). Absent fraud or duress, an agreement is presumed to be knowing and voluntary when the plaintiff is represented by counsel throughout the negotiation and settlement process, as Woods was here. *See Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007).

Although "[a] contract can be formed before there is an official document memorializing the deal," *Thermos Co. v. Starbucks Corp.*, No. 96 CV 3833, 1998 WL 299469, at *4 (N.D. Ill. May 29, 1998) (quotation omitted), if the parties "understand that the execution of a formal document shall be a prerequisite to their being bound there is no contract until the document is executed." *Lambert,* 575 F.2d at 135; *see also Ceres*, 500 N.E.2d at 5. In other words, "[w]here the reduction of an agreement to writing and its formal execution is objectively intended by the parties as a condition precedent to its completion, there can be no contract until then, even if the actual terms have been agreed upon." *Trendmasters, Inc. v. Walgreen Co.*, 1996 WL 422273, at *2 (N.D.Ill. July 24, 1996); *see also Consolidated Bearings Co. v. Ehret-Krohn Corp.*, 913 F.2d 1224, 1231 (7th Cir. 1990) (noting that whether signing a contract is a condition precedent to it becoming binding normally turns on the intention of the parties). Where the language of the relevant contract

is unambiguous, the court can determine the parties' intention regarding a condition precedent as a matter of law. *See Solaia Tech. LLC v. ArvinMeritor, Inc.*, 02 CV 4704, 2006 WL 695699, at *5 (March 16, 2006). Where the contract is ambiguous, the question of intent becomes a matter of fact and the court may "examine evidence beyond the language of the agreement." *Id.* at *7.

Here, the written agreement includes language which supports Woods's argument that her signature is a condition precedent to the settlement agreement, rather than a mere formality. Specifically, it states that "[t]he effective date of this Agreement shall be seven days following its signature by Woods provided she has not rescinded." (R. 94-1, Ex. A at 4.) That language clearly identifies Woods's signature as the event triggering the Agreement's effectiveness. The agreement further states that Woods "acknowledges that by signing this release, the Lawsuits, and all outstanding charges or claims will be resolved and dismissed." (Id.) In the written agreement's release provision, the parties agree that the consideration outlined in the agreement would satisfy any claims related to Woods's employment with Wickes "up to the date she signs this Agreement." (Id. at 3.) These provisions taken together convey the parties' intention for Woods's signature to serve as a precondition to the settlement agreement's enforceability. *See, e.g., Solaia*, 2006 WL 695699, at *6 (finding provision stating agreement "will become binding and effective upon the exchange of . . . the required signatures" to unambiguously convey intent to create condition precedent); *Continental Cas. Co. v. Steelcase Inc.*, No. 02 CV 8064, 2004 WL

1965699, at *8 (N.D. Ill. Aug. 23, 2004) (provision stating consideration "to be paid upon execution of . . . the agreement" demonstrates intent to establish condition precedent).

But even if this language, standing alone, is insufficient to establish that Woods's signature is a condition precedent to the settlement agreement, the objective evidence submitted by the defendants supports that conclusion. In reviewing objective evidence to determine whether the parties intended a formal writing to be a condition precedent to a contract, the court considers the following factors:

> whether the contract is one usually put in writing; whether there are few or many details; whether the amount involved is large or small; whether it requires a formal writing for a full expression of the covenants and promises; and whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations.

*Chicago Investment Corp. v. Dolins*, 481 N.E.2d 712, 714 (Ill. 1985). Although the $6,250 at stake here might weigh against a finding that a writing was intended, the remainder of the factors cut in Woods's favor. As this court has recognized, settlement agreements which include "releases, covenants not to sue, transfers of rights, and specific provisions as to communications about the settlement and confidentiality" are not typically resolved orally. *Solaia*, 2006 WL 695699, at *7. Those elements are all incorporated into the parties' agreement here. (R. 94-1, Ex. A.) Perhaps more importantly, the written negotiations reveal that Woods retained the right to decline the settlement agreement at any time before she signed. Mickelson's June 17, 2010 letter to Dolan conditions Woods's agreement on "review of and mutual agreement to the settlement terms." (R. 94, Ex. A-2.) In later emails, Speece

7

made clear that Woods expected all of the defendants' signatures on the document before she made her final commitment by signing. (R. 94, Ex. A-1.) Nothing in the ensuing record indicates that Woods abandoned these requirements. The fact that the contract went through several rounds of back-and-forth revisions further undermines the defendant's assertion that a binding agreement had been reached independent of the document's execution. Based on the objective manifestations of the parties' intent, Woods has shown that a final executed document was prerequisite to settlement. Because Woods never signed the agreement, the defendants' motion to enforce is denied.

## Conclusion

For the foregoing reasons, the defendants' Motion to Enforce Settlement is denied. The court acknowledges the defendants' representation that Wickes has no remaining assets and that the individual defendants intend to move to dismiss this case. (R. 93, Mem. at 2 n.1.) The parties are encouraged to revisit the possibility of settlement before turning to dispositive motions. Although Woods is not bound by the previously negotiated agreement, it is clear that the parties made substantial progress toward resolving this case. Perhaps the parties will be able to capitalize on that progress by focusing their efforts on re-working or excising the specific provisions of the proposed settlement to which Woods objects. The court is happy to host an in-person settlement conference to assist the parties. If the parties are able to reach an agreement, the court will require the parties to state the terms on the record in order to bind the parties to those terms regardless of whether a written agreement is executed.

**ENTER:**

_____
Young B. Kim
United States Magistrate Judge