# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY B. WOODS, | ) | |
| | ) | 09 CV 300 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| WICKES FURNITURE CO., INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | July 28, 2011 |

## MEMORANDUM OPINION and ORDER

Pro se plaintiff Shirley Woods has sued the now-defunct Wickes Furniture Company, Inc. ("Wickes"), and several of its former corporate officers and managers, including John Disa (Wickes's former President), Suzanne Forsythe (Wickes's former Vice President of Human Resources), and Ken Bretwisch (Woods's former manager). Woods alleges that she was fired from her sales consultant position in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and other unidentified federal and Illinois laws. Forsythe and Disa have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims against them. This court allowed Bretwisch to join in their motion. For the following reasons, the motion to dismiss is granted:

### Procedural History

In April 2006 Woods filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the United States Equal Employment Opportunity Commission ("EEOC"), checking boxes to indicate that Wickes had discriminated against her based on

race and disability. (R. 1, Compl. at 9.) Eighteen months later, on October 22, 2008, the EEOC issued to Woods a dismissal and notice of rights stating that it had "ceased processing" her charge. (R. 1, Compl. at 6.) Woods filed the current lawsuit on January 16, 2009. (Id.) Two weeks later Wickes filed a suggestion of bankruptcy informing the district court that it was involved in chapter 11 proceedings in the United States Bankruptcy Court for the District of Delaware. (R. 6.) Accordingly, the district court noted that this case was subject to an automatic stay, *see* 11 U.S.C. § 362(a)(1), and placed the case on its suspense docket. (R. 8.) Wickes emerged from bankruptcy in May 2009 and the district court reopened this case on July 22, 2009. (R. 19.) According to the defendants, Wickes now exists in name only. (R. 116, Mem. at 1.)

In May 2010 this case was referred to the undersigned magistrate judge to oversee discovery, settlement, and nondispositive motions. (R. 60.) Over the summer of 2010 the parties discussed settlement. After they came close to reaching an agreement, they consented to the jurisdiction of the undersigned judge for all future proceedings in this matter. *See* 28 U.S.C. § 636(c); (R. 69). At some point thereafter, the parties reached a verbal agreement to settle the case. But when it came time to execute the written settlement agreement, Woods refused to sign. Defendants moved to enforce the settlement agreement, but in April 2011 this court denied the motion, finding that the parties did not intend to be bound by the agreement until the written version was fully executed. (R. 103.)

On May 2, 2011, Woods filed what she captioned as a "Second Amended Complaint," (R. 110), but because it was her first attempt to amend, this court entered an order stating that the complaint would be treated simply as an amended complaint, (R. 111). In counts one through three of her amended complaint Woods alleges that the defendants engaged in unlawful employment practices, including sexual harassment and retaliation, in violation of Title VII. (R. 110, Am. Compl. ¶¶ 88-102.) In counts four and five she alleges that the defendants wrongfully terminated her and conspired to wrongfully terminate her, in violation of state or federal law. (Id. ¶ ¶ 103-137.) In count six Woods alleges that Bretwisch fraudulently altered company records. (Id. ¶¶ 138-141.) In count seven, which is titled "Cause of Action to Establish Liability of Corporate Director or Officer for Corporate Wrongful Conduct," Woods asserts that the acts of those who engaged in wrongful conduct should be imputed to Wickes's officers, directors, and managers. (Id. ¶¶ 142-146.) Finally, in count eight she alleges that the defendants deprived her of her 14th Amendment right to due process by intentionally delaying her employment discrimination case. (Id. ¶¶ 147-51.)

Three weeks after Woods filed the amended complaint, Forsythe and Disa filed the current motion to dismiss. (R. 114.) On July 5, 2011, this court granted Bretwisch's one-sentence request to join in the motion. (R. 123.) The court entered an order granting Woods until July 19, 2011, to respond to the motion to dismiss as it pertains to Bretwisch, (id.), but she did not file a supplemental response.

**Facts**

Woods's amended complaint consists of 151 paragraphs and 115 pages of accompanying documentation describing the events leading up to and following her March 2007 termination. Despite the length of the amended complaint, the details regarding the claims at issue are fairly sketchy, making it difficult to identify the specific allegations that support her eight distinct claims. Nonetheless, for purposes of the current motion this court must accept the allegations as true, *see Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008), and what follows below is the relevant background viewed in the light most favorable to Woods.

In March 2000 Wickes hired Woods to work as a sales consultant. (R. 110, Am. Compl. ¶¶ 12-14.) When she reported to work, Woods signed Wickes's code of ethics. (Id. ¶ 14.) Woods was a strong performer, consistently placing in Wickes's "Top 5 Sales Consultants" ranking. (Id. ¶ 19.) In March 2005 Disa sent Woods a letter acknowledging her five years of hard work. (Id. ¶ 20.) The next month she was asked to sign Wickes's employee handbook, which included the code of ethics. (Id. ¶ 21.) Rather than sign the handbook, Woods initialed it, "thus acknowledging the Code of Ethics." (Id.)

On June 7, 2005, Woods was involved in a car accident and sustained injuries to her back and left foot. (R. 110, Am. Compl. ¶ 22.) Woods took a period of leave under the Family and Medical Leave Act while she recovered from her injuries. (Id.) Her release from work expired on October 16, 2005, but when Woods did not return to work on that day,

Wickes fired her. (Id. ¶ 25, Ex. G1.) On October 23, 2005, Woods called Disa and questioned the termination. (Id. ¶ 26.) Disa then contacted a local manager and had her reinstated as a sales consultant. (Id.) Wickes allowed Woods to return to work in December 2005, but in the meantime, according to Woods, store managers manipulated records of her sales figures and did not allow her to "draw pay" to which she was entitled under Wickes's payroll policy. (Id. ¶¶ 30-32.)

On March 26, 2006, a fellow employee named Dominick Sharlac "maliciously threatened" and made "derogatory remarks" to Woods over a sales dispute. (R. 110, Am. Compl. ¶ 34.) Woods reported the incident to management, and on April 13, 2006, she filed a charge of discrimination with the IDHR and the EEOC. (Id. ¶¶ 34, 35 & Ex. K.) In that charge, Woods alleged discrimination based on race and disability and provided the following explanation in the section for particulars:

> Since on or about October 7, 2005 I have been subjected to harassment and different terms and conditions of employment in that I have been wrongly discharged; then reinstated, but I had already suffered a financial banking loss caused by my discharge for which I was not reimbursed; I was denied six weeks wages which I was entitled to in December, 2005, upon my return from medical leave; and I have been denied my sales award prize from March, 2005. On March 26, 2006 I was verbally harassed by a non-Black co-worker and I was threatened with being sent home for responding to his allegations. That same day this same co-worker called me a derogatory name that I reported to the manager and no action was taken. I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, and a disability, in violation of the Americans with Disabilities Act of 1990, (ADA).

5

(Id. Ex. K.) From April 2006 through July 2006, Woods called Disa at least four times to attempt "to inform him of the situation regarding the harassing behaviors in the store and lack of response from the managers." (Id. ¶ 38.) Woods did not speak to Disa directly, but left messages with his assistant. (Id.) Disa never returned her calls. (Id.)

In May 2006 and July 2006, Woods wrote to the EEOC to complain that Wickes had laid off its cleaning staff and now required sales consultants to clean the bathrooms and lunch rooms, and to "windex the glass in the showroom." (R. 110, Am. Compl. ¶¶ 23, 39, 44.) She also reported "management's harassment and questioning and failure to provide sales reports." (Id. ¶ 44.) On July 28, 2006, an employee who is not named in this case as a defendant sexually harassed Woods, "both graphically and verbally." (Id. ¶ 45.) Woods reported the incident to Bretwisch—who was her direct manager—and the EEOC. (Id.) The following month Woods and another sales consultant were involved in a sales dispute which was brought to Bretwisch's attention, causing Woods to suffer "an apparent anxiety attack due to sales anomaly stress." (Id. ¶ 46.) On August 6, 2006, Bretwisch sent Forsythe an email "telling of the harassments." (Id. ¶ 47.) That same day, Woods wrote to the EEOC "describing management's harassment and questioning and canceling sales orders, additional sexual harassment, and grief from various other issues." (Id. ¶ 48.)

In late 2006 and early 2007 Woods and Bretwisch experienced some conflict. According to Woods, on September 9, 2006, Bretwisch "inserted false information" into Woods's personnel file in an effort to defame her. (R. 110 Am. Compl. ¶ 49.) Bretwisch

6

sent Woods home during a Labor Day Sales event, telling her that "the doctors [*sic*] note regarding her recent medical procedure had expired." (Id. ¶ 50.) In November, he told Woods that if "you can't clean for Wickes, you can't work here." (Id. ¶ 51.) Around noon on January 9, 2007, Woods fell in the show room. (Id. ¶ 53.) She paged Bretwisch multiple times to report the fall, but was unable to reach him. (Id. ¶ 54.) Instead, at 2:00 p.m. Bretwisch approached her along with another manager and confronted her "with a trumped-up story about the events of the afternoon of December 28th." (Id. ¶ 55.) Specifically, management charged in writing that Woods "exhibited inappropriate and unproductive behavior" by making derogatory remarks about Bretwisch to a candidate who was interviewing for a management position. (Id. Ex. Tb.) Woods refused to sign the document, but wrote on the reverse side that she did not say the "particular things" she was accused of saying. (Id. Ex. S2.) Woods alleges that management forged her initials on the front of this document and faxed it to Wickes's human resources department. (Id. ¶ 56.)

Two months later, on March 13, 2007, Bretwisch conducted Woods's monthly review. (R. 110, Am. Compl. ¶ 57.) Two days after the review, a human resources supervisor emailed Bretwisch asking him to tell Woods that if she did not sign the code of conduct, she would be fired. (Id. ¶ 58.) The next day, on March 16, 2007, Wickes fired her, although according to Woods, she was never given a final chance to sign or initial the code of conduct. (Id. ¶¶ 59, 107.)

7

Analysis

Woods's claims against Forsythe, Disa, and Bretwisch are dismissed for failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In reviewing a motion to dismiss, this court accepts the well-pleaded allegations as true and draws all inferences in the plaintiff's favor. *Reger Dev. LLC v. National City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). A complaint will survive a motion to dismiss if it gives the defendants "fair notice of what . . . the claim is and the grounds upon which it rests," and if it includes allegations that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). In analyzing the current motion, this court bears in mind its "special responsibility to construe *pro* se complaints liberally and to allow ample opportunity for amending the complaint when it appears that by doing so the *pro se* litigant would be able to state a meritorious claim." *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006) (quoting *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996)).

I. **The Title VII Claims**

Disa, Forsythe, and Bretwisch (together "the defendants" below) argue that Woods's Title VII claims should be dismissed as to them because there is no individual liability under Title VII and because they are not named in Woods's EEOC charge. They are correct on

both points. First, Title VII makes it unlawful "for an employer to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995), the Seventh Circuit held that "a supervisor does not, in his individual capacity, fall within Title VII's definition of employer." Because Title VII does not provide for individual liability, it is appropriate to dismiss Title VII claims brought against managers and supervisors in their individual capacity. *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1168 (7th Cir. 1998); *see also Jacobeit v. Rich T'ship High Sch. Dist. 227*, 673 F.Supp.2d 653, 659 (N.D. Ill. 2009). That is true even where "an employer is bankrupt or otherwise judgment-proof." *Williams*, 72 F.3d at 555. Accordingly, this court agrees with the defendants that Woods's Title VII claims against them must be dismissed.

Second, in the interest of completeness, this court notes that the defendants correctly point out that none of them are named in Woods's EEOC charge. (See R. 110, Am. Compl. Ex. K.) What is more, the charge accuses Wickes of discrimination on the basis of her race and disability, whereas here, Woods is suing on the basis of sexual harassment and retaliation. It has long been recognized that "Title VII employment discrimination suits are permitted only against the respondent named in the charge before the EEOC." *Le Beau v. Libbey-Owens-Ford Co.*, 484 F.2d 798, 799 (7th Cir. 1973). Moreover, the scope of a Title VII lawsuit "is limited by the nature of the charges filed with the EEOC." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). Both rules are designed to give the

9

employer "some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Id.*; *Le Beau*, 484 F.2d at 799.

In her response to the motion to dismiss, Woods attempts to shift to the EEOC the blame for the discrepancies between her administrative discrimination charge and the allegations in her amended complaint. According to Woods, "the EEOC failed to update the charge, lost the investigatory file, [and] failed to produce it until much later as it was found." (R. 121, Resp. at 5.) Woods alleges that she wrote numerous letters to the EEOC informing them about discrimination at Wickes, and argues now that it was the EEOC's job to update the charge to reflect that information. Given these allegations, under other circumstances the court might allow a plaintiff to file a new EEOC charge listing the omitted defendants. *See Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 81 (7th Cir. 1992); *see also Wilson v. Kautex, Inc.*, No. 1:07-CV-60-TS, 2008 WL 474230, at *6 (N.D. Ind. Feb. 15, 2008). But because, as explained above, the defendants do not fall within Title VII's conception of an "employer," allowing Woods the opportunity to add these defendants to her EEOC charge would be futile. Accordingly, dismissal of counts one through three as they pertain to the defendants is appropriate.

## II. The Unspecified Claims

Defendants argue that this court should dismiss the remainder of the claims because the amended complaint does not include any specific allegations against them. Forsythe and

10

Disa point out that they are mentioned only in the amended complaint's statement of facts, where Woods simply alleges that they knew that she was experiencing harassment in the workplace. The complaint's allegations with respect to Bretwisch are in some instances more specific, but he joined in Disa and Forsythe's motion to dismiss without developing any argument directed toward the sufficiency of the allegations against him. Bearing in mind this court's obligation to construe Woods's complaint liberally, *see Kaba*, 458 F.3d at 687, the sufficiency of the allegations to support the remaining claims with respect to Forsythe, Disa, and Bretwisch is discussed below.

> **A. Counts IV and V: Wrongful Termination and Conspiracy to Commit Wrongful Termination**

Neither Forsythe nor Disa is mentioned in counts four and five, which accuse the defendants of "wrongful termination" and "conspiracy to commit wrongful termination." In count four Woods alleges that a Wickes human resources employee, Rachel Reger,[1] emailed Bretwisch and another defendant, Bob Zirk,[2] on March 15, 2007, asking them to have Woods sign the code of conduct and instructing them to fire her if she refused. (R. 110, Am. Compl. ¶ 105.) According to Woods, Bretwisch and Zirk never presented her with the code of conduct or asked her to sign it as Reger directed them to do, but fired her anyway on March 16, 2007. (Id. ¶¶ 108-09.) She alleges that on the day she was fired Zirk emailed Reger and

---

[1] Woods named Reger as a defendant in her original complaint, but dismissed her from the case on July 26, 2010. (R. 70.)

[2] In her amended complaint, Woods named Zirk as well as Bob Young as new defendants. (R. 110.)

11

lied to her that Woods refused to sign the code of conduct. (Id. ¶ 110.) It appears that Woods is alleging that the code of conduct rationale was a pretext meant to cover up Wickes's discriminatory intent—she alleges in count four that she "suffered discrimination and retaliation for reporting violations of other employees to the EEOC, and suffered a different employment outcome" from others who did not sign the code of conduct. (Id. ¶ 111.) In count five Woods alleges that Wickes's management conspired to fire her in retaliation for reporting their unlawful activities to the EEOC. (Id. ¶ 119.) Woods alleges that all of this was done in violation of her "federally protected rights." (Id. ¶¶ 117, 137.)

As the defendants point out, neither Forsythe nor Disa is mentioned in either of these counts. There simply is nothing in the complaint to put Forsythe or Disa on sufficient notice of the nature of Woods's claims in counts four and five. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (noting that courts need not accept allegations that "fail to provide sufficient notice to defendants of the plaintiff's claim"). That is especially true with respect to the conspiracy allegations, which are "often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

As for Bretwisch, Woods specifically alleges that he was one of the managers who fired her without carrying out the instruction to fire her only if she refused to sign the code of conduct. She also alleges that Bretwisch informed her that upper management at Wickes had told him that her sexual harassment claims "has been handled." (R. 110, Am. Compl.

12

¶ 124.) But to the extent Woods is asserting a violation of federal law against Bretwisch it is clear that she is simply restating under a separate label the grounds for her Title VII claims. Her allegations in these counts distill to the same accusations she makes in counts one through three—that Wickes employees fabricated reasons to fire her because they wanted to get rid of her after she started complaining about sexual harassment. But Woods cannot avoid Title VII's limitations on liability simply by re-asserting her Title VII claims under the umbrella of some other unspecified federal law. *See United States v. Antonelli*, 371 F.3d 360, 361 (7th Cir. 2004) (noting that courts should determine the nature of a pro se pleading by looking to its substance, not its label); *see also Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002) (stating that "courts give effect to the substance of a document and not to its caption").

In defending her claims, Woods argues that they are based on "relevant Federal and Illinois state statutes," but without identifying what laws she means. (R. 121, Resp. at 5.) Although the federal pleading standards set forth in Federal Rule of Civil Procedure 8(a) do not require a complaint to identify the applicable law, those standards also do not provide cover for a plaintiff who fails to identify the applicable legal theory in response to a motion to dismiss. *Kirksey v. RJ Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). The court must dismiss any claim for which relief is not possible under any set of facts that could be established consistent with the allegations. *See Zellner v. Herrick*, 639 F.3d 371, 378 (7th

Cir. 2011). Here Title VII is the controlling federal statute, and as discussed above, Woods's Title VII claims against the individual defendants must be dismissed.

Consistent with its obligation to construe Woods's pro se complaint liberally, this court has considered whether counts four and five state a separate claim under Illinois law. The Illinois common law of retaliatory discharge has been preempted in the employment context by the Illinois Human Rights Act, 775 ILCS § 5/1-101, *et seq*. *See Corluka v. Bridgford Foods of Ill., Inc.*, 671 N.E.2d 814, 817 (Ill. App. Ct. 1996). The Illinois Human Rights Act makes it "a civil rights violation for a person, or for two or more persons to conspire, to: [r]etaliate against a person because he has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, [or] sexual harassment in employment." 775 ILCS § 5/6-101(A).

But as is the case with Title VII, where an employee alleges that she was retaliated against for complaining to the IDHR, and where she was fired by a company official in the name of the employer, the claims under the Illinois Human Rights Act "must be against the employer and not against the official personally." *See Anderson v. Modern Metal Prods.*, 711 N.E.2d 464, 471 (Ill. App. Ct. 1999); *see also Misiak v. Farmer*, No. 10-133-GPM, 2010 WL 685895, at *2 (S.D. Ill. Feb. 23, 2010). "'Although it is possible for a company official to retaliate against someone personally, where the action is undertaken in the name of the respondent employer, the charge must be against the employer and not the official personally.'" *Misiak*, 2010 WL 685895, at *2 (quoting *In re Binghay & Clemons*, Charge

No.: 1991CN2356, 1994 WL 880430, at *1 (Ill. Hum. Rts. Comm'n May 27, 1994)). Here Woods's complaint makes clear that Bretwisch and the other managers involved were acting on behalf of Wickes when they terminated her. Thus, even under the applicable Illinois statute, Woods's claims against Forsythe, Disa, and Bretwisch as individuals must be dismissed. *See Anderson*, 711 N.E.2d at 471.

### B. Count VI: Fraud & Deception in Alteration of Company Records

The only person Woods specifically identifies in count six is Bretwisch. According to the complaint, Bretwisch forged Woods's signature on company documents "in order to attempt to falsely accuse the Plaintiff of wrongdoing" and "for the purpose and the intent of avoiding the truth and delaying justice for the plaintiff." (R. 110, Am. Compl. ¶ 139.) Forsythe and Disa properly argue that this count should be dismissed against them because there are no allegations that they were involved in the alleged misconduct. The court agrees.

Bretwisch, who is also pro se, joined in Disa and Forsythe's motion without developing any separate argument, despite the fact that count six is specifically directed at him. Thus the only argument before the court with respect to this count is that it should be dismissed because there are no specific allegations regarding the defendants. But that argument does not apply to Bretwisch, who is the accused perpetrator of the alleged fraud. Although the court is reluctant to dismiss the claim against Bretwisch for reasons other than those raised by the defendants, *see Zellner*, 639 F.3d at 378, it is not required to overlook the remaining deficiencies in Woods's pleading. Specifically, the complaint falls short of the

15

particularity requirements for fraud claims set forth in Federal Rule of Civil Procedure 9(b). Under Rule 9(b), a complaint alleging fraud must set forth the "who, what, when, where and how" of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Although at the motion to dismiss stage the plaintiff is not obliged to prove that the alleged misstatements were false, she is required to identify the alleged misrepresentations with sufficient specificity to put the defendant on notice of the alleged misconduct. *See Adams v. Pull'r Holding Co., LLC*, No. 09 CV 7170, 2010 WL 1611078, at *3 (N.D. Ill. April 20, 2010).

Here, Woods's allegations are that Bretwisch "fraudulently forged signatures, and modified company documents . . . in order to attempt to falsely accuse the Plaintiff of wrongdoing." (R. 110, Am. Compl. ¶ 139.) It is difficult to discern from the complaint which documents she is referencing, or what false accusation she means. Woods submitted an exhibit along with the complaint that appears to accuse Bretwisch of forging her initials on the Wickes's document detailing the December 28, 2008 incident. (Id. Ex. AL.) But her allegations reference "signatures" and "documents" in the plural, and it is unclear if there are other misrepresentations being alleged, and if so, what they are. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (noting that the complaint must allege the content of the alleged misrepresentations).

Moreover, to meet the Rule 9(b) requirements, "a plaintiff must plead actual damages arising from her reliance on a fraudulent statement." *Swanson v. Citibank, N.A.*, 614 F.3d

400, 406 (7th Cir. 2010). According to the amended complaint, it is unclear how Woods was damaged by the alleged fraud in light of her allegations that she was fired for discriminatory reasons rather than for misconduct. Given these deficiencies, count six of the amended complaint must be dismissed.

### C. Count VII: Cause of Action to Establish Liability of Corporate Director or Officer for Corporate Wrongful Conduct

In count seven Woods alleges that Wickes managers are liable because they "acted or failed to act in the before listed counts." (R. 110, Am. Compl. ¶ 143.) This count is an attempt to establish personal liability under the employment discrimination laws where, as the defendants point out, none exists. Woods does not present a corporate-veil piercing theory—there are no allegations that Wickes was a sham company—and in her response to the current motion she provides no other argument why she should be allowed to do an end-run around the personal liability bar. Accordingly, the motion to dismiss is granted with respect to count seven in its entirety.

### D. Count VIII: Violation of Fourteenth Amendment Rights

In her eighth and final count, Woods alleges that "Wickes failed to provide justice" by "delaying this matter" in violation of her Fourteenth Amendment procedural due process rights. (R. 110, Am. Compl. ¶ 148.) Once again, there are no allegations that Disa, Forsythe, or Bretwisch had any part in the delay Woods is referencing. The allegations are simply insufficient to provide the defendants with the kind of notice to which they are entitled under Rule 8. *See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th

Cir. 2007). And in any event, the claim is frivolous. Woods has no due-process claim under 42 U.S.C. § 1983, because there are no state actors involved in this suit. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). As the Supreme Court has explained, the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *Blum v. Yaretsky*, 457 U.S. 991, 1002-03 (1982) (quoting *Shelley v. Kramer*, 334 U.S. 1, 13 (1948)). Rather, a claim under the Fourteenth Amendment "requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the States is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *American Mfrs.*, 526 U.S. at 50 (emphasis in original) (internal quotations omitted). Because the defendants, and others named in this action, are purely private actors, and for the other reasons mentioned above, count eight is dismissed in its entirety.

**Conclusion**

For the foregoing reasons, the motion to dismiss is granted. All of the claims against Forsythe and Disa are dismissed with prejudice. Forsythe and Disa are no longer defendants in this case. Counts one through five against Bretwisch are dismissed with prejudice. Count six against Bretwisch is dismissed without prejudice. Woods is granted until August 12, 2011, to amend count six. If Woods fails to timely amend count six, count six against

Bretwisch will be dismissed with prejudice. Counts seven and eight are dismissed with prejudice in their entirety as to all named defendants.

                **ENTER:**

                _____
                **Young B. Kim**
                **United States Magistrate Judge**