

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| SHIRLEY B. WOODS )<br>    Plaintiff, )<br>vs. )<br>WICKES Furniture Company, Inc. )<br> and it's Heirs and Descendents )<br>and )<br>)<br>)<br>)<br>)<br>KEN BRETWISCH, Store Manager, )<br>in his Individual and Official Capacity, )<br>    Defendants. ) | **FILED**<br>AUG - 9 2011<br>Aug 9, 2011<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT<br><br>No. **09 CV 00300**<br><br>Judge Blanche Manning<br>Magistrate Judge Young B. Kim |

## NOTICE OF FILING THIRD AMMENDED COMPLAINT
## and PROOF OF SERVICE

TO: PATRICK D. DOLAN esq.
   222 N. LaSalle Street, Suite 300  Rep WICKES Furniture Company Inc
   Chicago, Illinois 60601

   KEN BRETWISCH
   6089 Chase Ave.
   Downers Grove, Illinois 60516

**PLEASE TAKE NOTICE** that on August 9, 2011 Plaintiff, Shirley B. Woods filed an Third Amended Complaint herein presenting detailed counts and seeking monetary relief, with the Clerk of the Court in the above entitled cause, you must answer within 10 days from the date of service hereof upon you.

              _Shirley B. Woods_
              Shirley B. Woods

## PROOF OF SERVICE

Under the penalties as provided by law pursuant to the Rules of the Federal Code of Civil Procedure, the undersigned certifies that the within Notice was served upon the person to whom directed by placing copies of same in an envelope addressed as shown above with prepaid delivery postage, and depositing same in the US Mail, Waukegan, Il, at or before the hour of 5:00 p.m. on the 10th day of August, 2011.

Attorney Shirley B. Woods Pro Se
Address P.O. Box 1025
City   Northchicago, IL 60064     Shirley B. Woods
Telephone (224) 532-3384

---

Woods vs Wickes, et. al.      1      August 9, 2011



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED
AUG - 9 2011
Aug 9, 2011
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

SHIRLEY B. WOODS )
                Plaintiff, )
    vs. )
WICKES Furniture Company, Inc. )
   and it's Heirs and Descendents )
  and )
 )
 ) No. **09 CV 00300**
 )
 ) Judge Blanche Manning
 ) Magistrate Judge Young B. Kim
 )
KEN BRETWISCH, Store Manager, )
in his individual capacity )
                Defendants. )

## THIRD AMENDED COMPLAINT

### INTRODUCTION

NOW COMES your Plaintiff, SHIRLEY B. WOODS ("Ms. Woods"), represented Pro Se, in reference to Title VII of the Civil Rights Act of 1964, Unlawful Employment Practices, Common Law Torts, Retaliation, and Wrongful Termination and Conspiracy to Commit Wrongful Termination law. Based on the EEOC Rights to Sue document issued on October 22, 2008, and Illinois State Statues, Pursuant to the rules of the Court, and petitioning the Court for the following request for monetary damages, a demand for a jury trial, and/or injunctive relief and states as follows:

### NATURE OF THE ACTION

This is an action against Wickes Furniture Company and it's heirs and descendents, and it's manager Ken Bretwisch, and as an individual ("Defendants" or "Wickes") under Title VII of the Civil Rights Act of 1964 and other Illinois State Statues, to recover damages from unlawful employment practices on the basis of sex, and actions taken to retaliate against the Plaintiff for exercising her protected rights, and Common law tortuous acts.

Plaintiff originally alleged that the Defendants discriminated against Ms. Woods by subjecting her to harassment because of her sex, and because she reported them to the EEOC. The Plaintiff now alleges that the Defendants retaliated against her in violation of corporate policies and by fraudulent means to modify her employment files thus effecting her professional reputation and influencing her potential future employment, after she engaged in protected activity (complaining about sexual harassment) by both impeding her ability to earn, defaming her character, and wrongfully altering her employment file.

## JURISDICTION AND VENUE

1. This court has jurisdiction of this matter is invoked pursuant to Illinois Employment Law, 775 ILCS 5/2-102 (D) Sexual Harassment.

2. The employment practices hereafter alleged to be unlawful were committed within the jurisdiction of the Northeastern District of Illinois.

## PARTIES AND OTHER PERSONS

3. Ms. Shirley B. Woods, Plaintiff, Pro Se, P.O. Box 1025, Northchicago, Illinois

4. At all relevant times, Defendant, WICKES Furniture Co. Inc. had continuously been a corporation licensed to do business in the State of Illinois, represented by Patrick Dolan (SMF), 222 N. LaSalle Suite 300, Chicago, Illinois 60601, and

5. At all relevant times, Defendant, WICKES Furniture Co. Inc. had continuously been an employer engaged in an industry affecting commerce.

6. Mr. Ken Bretwisch, Store Manager, individually.

## FACTUAL BACKGROUND

7. On March 01, 2000 Shirley Woods had interviews with Wickes Mr. John Mackloff and Mr. Joe Smalsuga and Mr. Lee Lenoir and the Corporation initiate a background investigation on Ms. Woods.

8. Gerald Gold & Associates, Information Services, returned the report on March 7, 2000 (see Exhibit A- Fax from Gerald Gold & Associates date was hired by Wickes Furniture Company.)

9. Ms. Woods reported to work and started training (selling) at Store 253 in Wheeling on March 20, 2000. At this time Ms. Woods signed the Code of Ethics along with other company HR documents.

10. In August of 2000 Mr. Jason Hurgott maliciously threatened Ms. Woods over a sales dispute, and Ms. Woods reported this to store management. Mr. Hurgott was reprimanded by Mr. Lee Lenoir.

11. In October of 2000, Mr. John Makloff handpicked two Sales Consultants to transfer to the "Grand Opening" event at Vernon Hills Store 252. Ms. Woods was transferred along with Mr. Lawrence Underwood to the new store.

12. On April 11th, 2001 Ms. Woods signed the Code of Ethics document presented to her by management. (See Exhibit B)

13. In the Summer of 2004 Mr. Kurtis Boyd maliciously threatened Ms. Woods over a sales dispute, and Ms. Woods called the store manager, Mr. Al Lapriori at his home, twice, to report this incident.

14. Once again as a result of superior performance being consistently in the Top 5 Sales Consultants ranking, and as of May 14th 2005, participated in the "Grand Opening" at store 257 in Algonquin, IL.

15. On March 10th 2005 Mr. John Disa, President of Wickes, sent letter acknowledging 5 years of hard work to Ms. Woods. (see Exhibit D)

16. On April 26th, 2005 Ms. Woods initialed the Employee Handbook which included a section on Ethics, thus acknowledging the Code of Ethics. (see Exhibit E)

17. On June 7th, 2005 Ms. Woods was a victim in an automobile accident where her back and left foot was injured, and she asked for and was allowed time to convalescence under FLMA. (see Exhibit E2)

18. Between June and October the Store Management released the store cleaning staff and began to insist that the Sales Consultants perform the menial cleaning tasks instead. Ms. Faith Phillips and Tony Ballerino, both threatened Ms. Woods with termination if she failed to comply and clean the store.

19. On October 13th, 2005 she had photos taken of her foot subsequent to asking her doctor about returning to work. (See Exhibit F0, F0b, F3)

20. On October 20th, 2005 Wickes inappropriately terminated Ms. Woods the first time. (see Exhibit F1 and F2) and received mail on October 27th, 2005 regarding COBRA coverage.

21. On October 23rd, 2005 Ms. Woods in a telephone conversation with Mr. John Disa questions the termination. Whereupon he contacted the local management, Michael Hoeghn called back and "Reinstated Employment" retroactive to October 20th. DHL delivered documents at 10:30 pm Nov 10th. (See Exhibit G1 and G)

22. In October and November of 2005, Ms. Woods communicated on numerous occasions that she will be returning to work on December 7th. They failed to prepare for her return to work. (see Exhibit H1)

23. On December 7th, 2005 Ms. Woods attempted to return to work, however Susie Brook would not let her work until December 13th, yet they still did not reinstate her in the sales system and sent her home until December 16th, 2006.

24. On December 13th 2005 at 4:08 PM an email (one of a series) from the case nurse, Janet Putbress, stated a derogatory opinion about Ms. Woods returning to work, and defamed her character to others at the corporate offices. (See documents form EEOC files)

25. During this end of year accounting period, the store manager were manipulating the sales totals of the various sales consultants and Ms. Woods challenged the sales records, as to her sales volume and the others in the store. Mr. Mike Green was terminated at that time. And Mr. Jerry Solinsky the store manager continued to thwart her efforts. However she had high sales figures. (See Exhibit H)

26. Ms. Woods attempted to get paid and was told funds would be deposited into her account by the 19th., they were not. She phoned, and was told check was in the Algonquin store. They stalled, after being sent to Algonquin, it was said that the check is now in Wheeling and that it could be picked up there. She phoned again, "The check was just mailed." (See Exhibit I) As a result of these actions she did not receive her compensation until after the holidays.

27. On December 29th 2005, thru January 3rd 2006 in a series of emails between various corporate staff and store payroll personnel, Susie Brooks, Mary Carolin, Aimee Ritter, et. al. where the 6 weeks of draw pay ($400) should have been given to Ms. Woods, until her sales were reestablished. They failed to follow this policy, and refused to pay her what she was due.

28. Ms. Woods soon continued to perform in the "Top 5" of sales of early 2006 see report 1/7/06 "Top of the Sales Charts" (See Exhibit J)

29. On Mar 26th, 2006 Dominick Scharlac maliciously threatened Ms. Woods over a sales dispute, said derogatory remarks, and was reported to Wickes management.

30. On April 13th, 2006 Ms. Woods Reported Mr. Scharlac to the EEOC. (see Exhibit K)

31. On May 15, 2006 Mr. Patrick D. Dolan, filed an appearance with the EEOC as counsel of record for this matter.

32. On May 22nd, 2006 Ms. Woods wrote a 7 page letter to the EEOC describing management's initial retaliation and harassment following the EEOC reporting.

33. During the time period from April through July of 2006, Ms. Woods telephoned Mr. John Disa at least four separate times to inform him of the situation regarding the harassing behaviors in the store and lack of response from the managers. Each time his secretary took notes, and said she would inform him of the messages. He never returned any of her communications.

34. On May 29th, 2006 Ms. Woods wrote a 5 page letter to the EEOC describing management's demands to clean the bathrooms, lunch room, and windex the glass in the showroom, etc. Ms. Woods documented additional harassment following the EEOC reporting.

35. On June 8th, 2006 Ms. Woods was given a monthly review by Mr. Solinsky wherein it was stated ,"Strong written #2…nice overall improvement in most areas. (See Exhibit L2) where she initialed "S.W."

36. On June 8th, 2006 Ms. Woods was transferred back to Vernon Hills (252), however no "draw" was offered as was the policy for others.

37. On June 30, 2006 Mr. Patrick D. Dolan, again filed an appearance with the EEOC as counsel of record for this matter, after forty-five days of discussions with the co-conspirators.

38. On July 3rd, 2006 a good customer, Ms. Sollmann writes a note on Wickes letterhead referencing the sale in which other salesmen attempted to "book sales" due Ms. Woods. (See Exhibit M)

39. On July 8, 2006 Ms. Woods wrote a 2 page and a 9 page letter to the EEOC describing management's harassment and questioning and failure to provide sales reports. Ms. Woods documented additional lax ethical behaviors and untruths.

40. On July 28, 2006, on a Friday, Jeffery Roberson did in fact sexually harass Ms. Woods, both graphically and verbally. She reported it to Ken the manager, then Ms. Woods called the EEOC a few days later.

41. In August of 2006 a sales dispute/anomaly between Ms. Woods and Lawrence Underwood was mediated by a store manager Robin W. (spelling?, from the corporate, Wheeling location), then brought to the attention of Ken Bretwisch the next day, where the stress became almost unbearable and then suffers an apparent

anxiety attack due to sales anomaly stress. Paramedics were called and they then checked-out Ms. Woods.

42. On August 6, 2006 an email was sent by Mr. Ken Bretwisch to Suzanne Forsythe telling of the harassments and in reply she will inform Ms. Reger. (see Exhibit CC1)

43. On August 6, 2006 Ms. Woods wrote a 10 page letter to the EEOC describing management's harassment and questioning and canceling sales orders, additional sexual harassment, and grief from various other issues.

44. On September 9th, 2006 Ken Bretwisch inserted false information at 12:39:51 PM about Ms. Woods alleged "carding" of a customer in order to deprive her of sales and added defamatory information to her file. (see Exhibit N)

45. During the Labor Day Sales Event in 2006 Mr. Bretwisch told Ms. Woods that the doctors note regarding her recent medical procedure had expired, Ms. Woods was sent home during the Labor Day Event.

46. In November of 2006, once again Mr. Ken Bretwisch told Ms. Woods, "If you can't clean for Wickes, you can't work here." Mr. Bob Young was there that day and told Mr. Bretwisch to send her home.

47. On December 28, 2006, an applicant had an interview scheduled with Ken Bretwisch on a Thursday, however Mr. Bretwisch does not normally work on Thursdays. The person was furious to be waiting for over three hours, and approached Ms. Woods to inquire about whom he should contact. Ms. Woods gave him the number for corporate HR, Ms. Rachel Reger.

48. On January 9, 2007 at approximately noon Ms. Woods fell in the show room. Witnessed by two co-workers who signed "testimonies" (see Exhibits S1 and S2b)

49. On January 9, 2007 immediately after the incident Ms. Woods paged Mr. Bretwisch multiple time regarding the incident. He failed to answer any of the pages.

50. On January 9, 2007 Ken Bretwisch spent most of the day in his office on the computer and on the telephone. At about two o'clock in the afternoon management approached Ms. Woods, both Ken and Ms. Susan Kooser, confronted Ms. Woods with a trumped-up story about the events of the afternoon of December 28th. In a fabricated document (a "final warning"; note, there has never been an initial warning) they attempted to harass Ms. Woods into signing this false statement. She refused to sign on the employee line, and turned the

document over, and wrote her rebuttal on the reverse side. (see Exhibit S2) (also documented in a 16 page letter Jan. 9, 2007, to the EEOC.)

51. Later that same day (note the FAX timestamps) Management "forged" her initials on the front, and entered the time, and FAXed this document back to Rachel Reger for her contributions. (see Exhibit TB) (see Exhibit AL – Evidence of Possible Forgeries) Additionally, Plaintiff believed Wickes Management were committing fraud with the government by making false and misleading statements to the government regarding the response and lack of reply to the EEOC investigation.

52. On March 13, 2007 Mr. Bretwisch performed a monthly review, the first in nine months. (Documented in letter March 22, 2007 8 AM, to the EEOC.)

53. On March 15, 2007 an electronic memorandum was sent by Rachel Reger to both Bretwisch and Zirk informing them to ask Ms. Woods to sign the Code of Conduct once again. If she elects to sign then we will not terminate her. (see Exhibit CC2).

54. On March 16, 2007 at 9:25 AM Management wrongfully "Terminated" Ms. Woods.

55. Plaintiff was wrongfully discharged from her position with Wickes, which was not only discriminatory but retaliatory. By alleging retaliation for her registration of a complaint, Plaintiff was again alleging fraud as defined by the company code of ethics, by Wickes itself.

56. On March 16, 2007 an electronic memorandum was sent by Mr. Bob Zirk to Ms. Rachel Reger informing her that Ms. Woods refused to sign the Code of Conduct, and was terminated. (see Exhibit CC3)

57. Wickes reported wrong information to the IDES and other reporting agencies regarding her wrongful termination.

58. Ms. Woods initiated claims for her unemployment compensation upon termination.

59. On May 30, 2007 the initial hearing was conducted by Judge Gesualdo.

60. On July 30, 2007 an appeal was filed with the IDES Review Board. Docket #7018454A

61. Wickes seems to have obstructed the process by withholding the "HR file" for almost three months. Please refer to **07 MR 1231** - Exhibit A – Timeline. (This is a history of Ms. Woods employment with important events listed to show the saga of her employment and seemingly wrongful discharge. The timeline table lists the

event, the actions of Ms. Woods and the actions of Wickes, with relevant exhibits of documents as evidence.) 820 Ill. Comp. Stat. §§ 40\1 to 40\12 Rules for Employee access to records; Must provide the entire file within 7 working days... They seemed to have violated this request by waiting almost 90 days. When Ms. Woods reviewed the HR file, she noticed many anomalies, seemingly added records, and records that she has collected that should have been included into the file were missing from the file. These items seem to indicate that Wickes violate the Code of Ethics. See 07 MR 1231 - Exhibit AK – Wickes Furniture and the Code of Ethics.

62. Ms. Woods was told on August 31, 2007 that the Board of Review denied the appeal: IDES decision from the members: J. Huntbonan, Chairman, Stanley L. Drassler, Jr. Member, William J. Nolan, Member, Constantine M. Zografopoulos, Member. at Chicago Illinois, IDES Review Board denied Benefits. They wrote:

63. "Received entire transcript of the refereed hearing we find it adequate and the further taking of evidence unnecessary. We also find after due consideration that the referee decision is supported by the record and the law." 602A states in pertinent part that misconduct means the willful and deliberate violation of a reasonable rule or policy of the employing unit, governing the individuals behaviors in performances of his work (emphasis added.) The claimant was asked to acknowledge that she would maintain certain standards of conduct in the workplace. The claimant refused to so acknowledge. It has not shown that the Code of Conduct was unreasonable, or, intended to require unlawful, illegal, or untoward behavior. Insubordination is defined as a refusal to submit to reasonable authority. Every worker is subject to some degree of authority exercised by the employer through supervisory personnel. The authority normally covers such things as time of reporting to work, assignment of duty, manner of performing work, conduct on the job, and the like. The willful refusal of the employee to submit to the reasonable instruction of the employer in the conduct of it's business is in violation of the workers duties which are implied in the agreement of hire. The claimant wanted to pick and choose which parts of the employer's code of conduct would govern her behavior. The claimant's failure to adopt the code was insubordinate. The claimant inaction disqualified the claimant from further employment. We acknowledge the claimants appeal filed pursuant to section 803 of the Illinois Unemployment insurance act and section 2720.300 of the benefits rules and claimant submission of written of written argument and conformity of benefit rule 2720.315. We incorporate the referee's decision as part of our decision and affirm the denial of benefits as stated therein. The employer is a party to these proceedings. The decision of the referee is affirmed."

64. In September Ms. Woods called the attorneys and they told her go to the Circuit Court to file for a court date, she did. For over 4 months she followed–up multiple times with various people and they told her to go to the Circuit Court to file for an administrative review by the Court and for her to wait for a date. Then

someone told Ms. Woods to file with this Court the following Motion and get a date herself [reprinted here for readability]:

65. "*I have had a numerous amount of problems with my former employer, due to the EEOC investigations, as of 2006. They stated I did not sign their Code of Conduct form. I read it and I put my initials on the form just like I did in 2005. I did not get fired from my job at that point. For this reason, so I don't think that I should have been let go this time. After my injury of Jan 9th 2007, H.R. Director & C.E.O. were making numerous trips to the Vernon Hills location watching me. The Code of Conduct was issued by the store Mgr., & I signed S.W. & the very next time I received a certified letter from H.R.   Please overturn decision.*"

66. The IDES was informed by Ms. Woods of her action in the 19th Circuit, (letters to Mr. Prousis and Mr. Nolan) including various papers to the Court.

67. In February of 2008 Ms. Woods went before the 19th Circuit Court **07 MR 1231**, The Honorable Judge Mullen, and after an attempt to delay justice by Wickes attorney, was finally heard.

68. On March 13, 2008 the Honorable Judge Margaret J. Mullen decided to remand the case back to the IDES, for a "New Hearing" based in part on "Mistakes that were made…" and that "New evidence" was discovered and not included in the original IDES hearing in 2007:

   i) The evidence of wrong doing by Wickes employees regarding documentation i.e., fraudulent entries seemingly made to her employment HR file,

   ii) Evidence of deferential treatment in the decision to terminate her based on her initialing and not signing the Code of Conduct,

   iii) Evidence of perjuries by Wickes Management at the 2007 IDES hearing, "She was the only one who did not sign the Code of Conduct",

   iv) Additional affidavit of an other employee, Mr. Underwood, who also "Just initialed the Code of Conduct",

   v) And a complete record of events that include multiple attempts by Ms. Woods to get Wicks to do something about the harassment (reported to the EEOC) and nothing done, in fact the offender was allowed to remain in contact with Ms. Woods during her employment and her performing her duties

   vi) Then when Ms. Woods fell at work, they attempted a fraudulent excuse to terminate her, (see the body of evidence), and then they wrongfully terminated her, and reported to various agencies this termination, which wrongfully interfered with her attempts to gain new employment.

69. On April 18, 2008 the Plaintiff sent a letter to the IDES (and others including the Judge in this matter) outlining the April 9th letter from the IDES and questioning the process; wrong reasons for sending notices, and lack of justice in the IDES. (see 07 MR 1231 - Exhibits filed in the Court on April 29th)

70. The IDES had a "New Hearing", on May 6, 2008 yet it seems like none of the new evidence presented to the IDES (the same evidence filed in he 19th Circuit) was considered in this hearing by Judge Gesualdo, Referee:

    i) The Referee seemingly ignored the "New" evidence, and made the exact same decision as last year. The IDES seems to be focused on insubordination, again:

    ii) On February 8, 2008 New information came to light that proves Wickes Manager Rachel Reger committed perjury, she lied to the IDES Referee, Judge Gesualdo, during the hearing of May 30, 2007. See 07 MR 1231- Exhibit AA 1 – Transcript of the "Hearing" On page 4 line 16 (p4:16) the Judge swore in the witnesses. On P4:22 Ms Reger said "I do.", then starting on p5:21 she started to tell less than the truth; p6:5 "…every employee…", p6:16 "We did not have another person who refused to sign." She lied. See Affidavit of testimony from Lawrence Underwood, filed in the Clerk's office, included with the case documentation. He testifies that he also never signed the Code of Ethics Document, he just initialed it, and he is still currently employed by Wickes. Ms. Reger also deceived the court, (on p7:11) she admits to receiving advise from corporate counsel, then Mr. Leung asked her (p7:15),"Okay, Did you ever discuss with counsel the possibility of letting her stay until she did violate a policy, then terminate her then?" She did not answer the question directly with a "yes" or a "no". She avoided answering and then said something very unwise that foretells the discrimination inherent in the matter; Ms. Reger said (p7:17), "Uh, we spoke with our counsel about the fact that everybody was being asked to sign this, and that since it was part of a job practice and for all new hires, it would be inconsistent for us to allow one person not to sign it." Really? In fact, Ms. Woods never violated any ethics at all. Wickes never warned her about any serious violations, they never included any legitimate entries in her HR file. She has been faithful to her employer, and is one of the top sales persons in the company; see the other reports listed in the timeline.

    iii) In the appeal filed in July 30, 2007, it is stated, "The Claimant did not put her full signature on the Code because she was (in part) unsure of its consequence. However the Claimant never refused to follow the Employer's Code of Conduct or perform her job to the best of her ability. The Claimant had been allowed to work since October of 2006 [*actually 2005*] without having signed the Code. The Claimant believes that the Employer should not be able to

choose when to enforce their "condition of employment" at their convenience. The Claimant believes that she was terminated for other reasons." It seems obvious to a reasonable person that the real reason for termination was based on discrimination, and/or retaliation for reporting discrimination, or a combination of both reasons, per the evidence.

iv) The IDES transcript of the refereed hearing in 2007 was not adequate, as it was not truthful, and the further taking of evidence was necessary. The IDES reasoning seems to be focused on insubordination and they seemed to be deceived by the Wickes management seeming perjury, hiding the true facts of Ms. Woods attempts to get them to do something about *their violations* of the Code of Ethics, and they seem to be insensitive to her various rights under the law. She did not harm Wickes in anyway; on the contrary she was forced to endure injustice of Wickes management ignoring her calls for action in addressing workplace violation of the Code, by others. The evidence now presented demonstrates this with "hard" documentation. The record in 2007 was incomplete. However it is now complete, Judge Mullen remanded that the IDES consider the new evidence in a "New Hearing".

v) In fact "No Harm", was done to the Wicks Company by Ms. Woods failing to sign the Code of Conduct. Ms. Woods followed the Code of Conduct in the performing of all her duties, and continued to profit the company by her continued sales. No harm was done to Wickes by Mr. Underwood failing to sign the Code of Conduct, and they did not fire him!

vi) The Wickes Company, nor any representative counsel, were present at the "New Hearing" to refute any of the new evidence, nor provide any opposing arguments in the defense of their previous position. Proper notice was served, and they failed to testify or to respect the IDES, or the Referee in this matter.

71. Ms. Woods was informed on August 13, 2008 that the Board of Review denied the appeal: IDES decision from the members: J. Hunt Bonan, Chairman, Stanley L. Drassler, Jr. Member, William J. Nolan, Member, Constantine M. Zografopoulos, Member, Elwood Flowers Sr., Member at Chicago Illinois, IDES Review Board denied Benefits. They wrote:

i) In the "Decision" Document dated August 13th,(see Exhibit BC – Decision) the IDES seems to be ignorant of the fact that this new evidence was remanded from the 19th Circuit. In wording found on page 2, they indicate the requirement for a summary, which is in the *record*, it is in the document found on page 4 of the Motion dated February 14, 2008.

ii) They also indicate a need to identify the reason for the introduction of the "new" evidence, which was stated in the documents filed *both* in the Circuit

      Clerks office *and* included in the IDES file. This can be found on page 2 and 3 of the document filed in 07 MR 1231 on February 14, 2008.

   iii) The IDES seems to write in the decision that this new evidence was not included in the decision process due to some obscure reasoning about notification of the other parties. They state on page 3 "the rules of statutory construction..." that the other parties should have been notified. In answer to interrogatories filed on this date to the Wickes representatives, and to the IDES case manager, that the employer had indeed been sent by Ms. Woods. This included the total contents of all the petitions, and requests for oral arguments.

72. On Dec 5th 2008, Ms. Woods wrote to the Inspector General of the EEOC, Aletha L. Brown regarding the status of the case. (see Exhibit CD1)

73. ON January 2, 2009, Ms. Woods sent a letter to Congressman Mark Kirk a letter outlining the case and the EEOC's role in the matter. (see Exhibit CD2)

74. On April 27th, 2009, The Inspector General of the EEOC sent Congressman Kirk a letter including a memorandum from Michael Dougherty, Acting Director Field Management Programs EEOC, replied to Ms. Brown where he wrote:

*"You asked us to provide information addressing the time lag between the intake of the charge and the administrative closure. The delay in processing Ms. Woods' charge is attributable to several factors. Most of the delay is attributable to the Respondent's (Wickes) failure to timely respond to Ms. Woods' charge. According to the file, the Chicago Office served Ms. Woods' charge on April 13, 2006, and requested the employer to submit it's position statement by May 15th of 2006. However, **Respondent (Wickes) never submitted a position statement**."*

75. Between April of 2006 and the time Wickes Management terminated Ms. Woods in March of 2007, no one answered the EEOC charges. Everyone in the chain of management knew of the EEOC allegations, and they ignored the EEOC. Wickes *NEVER* replied to a federal agency responsible for investigating employer wrongdoing.

## IN SUMMARY

76. Ms. Woods performed her job well, made many sales, and broke no ethical rules from day one of her employment. She did right, and they did her wrong.

77. In the case "Toussaint v. Blue Cross and Blue Shield of Michigan" [292 N.W.2d. 880 (1980) Supreme Court of Michigan,] The Honorable Judge Levin said in his writings:

78. *"...Where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative, and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official, purport to be fair, and are applied consistently and uniformly to each employee. ... Having announced the policy, presumably with a view to obtaining the benefit of improved employee attitudes and behavior and improved quality of the work force, the employer may not treat its promise as illusory."*

79. **Wickes did the complete opposite, they tried to use the Code of Conduct to virtually bludgeon Ms. Woods... as the evidence supports!**

80. In open court, on March 13, 2008, Mr. Prousis, Assistant Attorney General, did hold up the filing, took a step back, and said something to the effect of, "I represent the IDES and this evidence is a matter between Wickes and Ms. Woods, and I don't want anything to do with it."

81. Judge Margaret J. Mullen intended for the Hearing de Novo, to include additional evidence of wrongdoing, and remanded that justice be served in this matter.

82. More than thirty (30) days prior to the institution of this lawsuit, the Ms. Woods filed a charge of discrimination with the EEOC alleging violations of Title VII of the Civil Rights Act of 1964. All conditions precedent to the institution of this lawsuit have been fulfilled.

**CAUSES of ACTION**

**(REMAINING) COUNT VI**

**FRAUD AND DECEPTION IN ALTERATION OF COMPANY RECORDS**

1. As and for the preceding paragraphs, the Plaintiff incorporates Paragraphs 1 through 82 as though full set forth herein.

2. That during his review of the records Mr. Ken Bretwisch, fraudulently forged signatures, and modified company documents, removed information that supported the Plaintiff's good job performance, indicated customer satisfaction, and referred to events where the employees of Wickes failed to act upon her complaints:

    a) These actions falsely modified the employment records of the Plaintiff in order to attempt to falsely accuse the Plaintiff of wrongdoing. The resulting documents were false and untrue. In truth and in fact Wickes did allow Mr. Bretwisch to commit fraud in such actions. (see Exhibit AL – Proof of Forgery)

    b) It was willfully and purposely done to subvert justice. The activities were so made by the defendants for the purpose and the intent of avoiding the truth and delaying justice for the plaintiff.

    c) In addition, the wrongful modification of the employee files caused potential and actual prejudice against the Plaintiff in so far as those who had access to the Wickes corporate records, did move onto hold positions of influence in the furniture business and could have or did make decision regarding the Plaintiff. For example: Mr. Disa is now the president of Ashley Furniture, where the Plaintiff worked at Ashley Furniture in 2008, for only a few weeks before they wrongfully terminate her on shaky grounds. Many others who had access to the employee files are also employed in positions related to hiring sales employees (i.e. HR managers), and could base their decisions on the contents (or as the case may be) the missing contents of this altered file.

    d) The following are well established guidelines that companies are expected to follow in these matters: The human resources department can develop a security access procedure for these various files. The company can keep

an overview by cross-referencing in one file the relevant documents in another file. If a person who has access to one file wants to see another document in a separate file, he or she would have to have clearance under the file access procedure in order to do that.

e) In addition a reputable company must:
- recognize when an investigation is in order;
- decide what the investigation should establish, such as whether a particular person experienced harassment or whether a set of computer files has been deleted;
- select appropriate investigators;
- identify potential witnesses and documents for review;
- plan the investigation (best to have a written plan);
- organize a list of questions to be asked of witnesses;
- **establish security for files and records**; and
- be prepared to modify and update the plan as needed based on new information that might come in as the investigation progresses.

It seems that the people at Wickes Furniture Company, as individuals did none of these things, in fact the Plaintiff believes that Mr. Bretwisch did in fact violate the basic premises that the integrity of documents should be preserved. If discovery were allowed, it would show that the Human Resources Department possibly violated most if not all of these guidelines. They have produced no access logs, and even defied the Delaware Bankruptcy Court Order not to destroy any documents.

f) Also when references are requested from those inquiring about the Plaintiff's job performance at Wickes, altered and missing information, has a direct result in the twisting of the referenced job performance. Therefore this does directly effect the Plaintiff's future earnings.

g) It was material, directly related to this employment case.

h) The Plaintiff did in fact request her Employee File in writing, in the Summer of 2007, before the IDES Hearing. They failed to produce said file within the statutory time limit (fourteen days max), thus causing a sufficient period of time to elapse so as to allow for **anyone to tamper** with said files. The file was not produced even after many weeks. The Plaintiff remembers many events where information should have been included in the file, and upon examination these information were missing. This caused opportunity to commit unethical activities.

      i)    It was highly probable to have controlled the result, subversion of justice. The plaintiff's employment files were wrongfully modified.

      j)    By reason of the above the plaintiff has been damaged.

3. The unlawful acts and practices complained of above were intentional.

4. The unlawful acts and practices complained of above were done with malice and/or reckless indifference to the federally protected rights of Ms. Woods.

## DAMAGES

That the harm caused by the Defendant's actions in all of the above captioned count includes but is not limited to the following, legal, liquidated, and equitable damages:

1. Ms. Woods suffered and continues to suffer loss of comparable employment,

2. loss of past and future income,

3. loss of past and future employment benefits,

4. loss of future earning capacity,

5. suffers emotional distress, humiliation, embarrassment,

6. loss of apartment and costs relating to storage of household goods,

7. loss of opportunities for career advancement,

8. and damage to reputation.

## EXEMPLARY DAMAGES

Ms. Woods would further show that the acts and omissions of the Defendants complained of herein were committed with malice or reckless indifference to the protected rights of Ms. Woods. In order to punish Defendants for engaging in unlawful discrimination and

retaliation, fraud and deception, and to deter such actions and/or omissions in the future, Ms. Woods also seeks recovery from Defendants for exemplary/punitive damages.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of all issues of facts in this case.

## PRAYER FOR RELIEF

WHEREFORE, for all the forgoing reasons, Plaintiff SHIRLEY B. WOODS respectfully requests that this Honorable Court grant the following:

A. Enter judgment in her favor and personally against KEN BRETWISCH and award Ms. Woods punitive damages in an amount exceeding five hundred thousand dollars;

B. Enter judgment in her favor and against the Defendants and award Ms. Woods for all her attorney's fees and all expenses to date relating to these matters, in order to make whole Ms. Woods;

C. For such other and further relief the court deems just.

WHEREFORE, Plaintiff SHIRLEY B. WOODS, hereby requests that this cause be submitted to a jury on all claims so triable.

Respectfully submitted, *Shirley B. Woods*
Shirley B. Woods